UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY A. DEGENES,<br>    Plaintiff,<br><br>v.<br><br>TIM MURPHY, a U. S. Congressman,<br>    Defendant. | Civil Action No. 07-1370<br>Judge Nora Barry Fischer |

## MEMORANDUM OPINION

This is a civil rights action brought by Anthony A. DeGenes ("Plaintiff"), a *pro se* litigant, who alleges that Congressman Tim Murphy ("Defendant") violated his right under the First Amendment to listen and receive information by deciding not to send Plaintiff a written explanation as to why he would not present Plaintiff's proposed legislation before the United States Congress. For the reasons set forth below, the Court GRANTS Defendant's Motion to Dismiss [DE 4].

### FACTS

This matter arises from a prior legal representation in which Plaintiff requested that a former attorney investigate information about Plaintiff with respect to a Pennsylvania Child Abuse History Clearance check and a Freedom of Information Act ("FOIA") check. Docket No. 1, Complaint at ¶ 6 (hereinafter, "Complaint"). Plaintiff states that he did not receive any information regarding the FOIA check, except a letter from his former attorney stating that all the information was disclosed. *Id.*

Subsequently, Plaintiff contacted Defendant's office in November of 2006 in order to propose legislation regarding the formation of an agency or department that would gather and prepare "an impartial and unbiased investigative report" for Plaintiff and other individuals in his

1

situation. Complaint, Exh. 4 at 13. Plaintiff stated that he did not receive a response from Defendant. Complaint at ¶¶ 34-35. As a result, Plaintiff instituted this suit, requesting that the Court require Defendant to give a written explanation as to why Defendant will not present Plaintiff's legislation. Complaint at 5.

However, Exhibit 6 to his Complaint is an email from Michael Baxter, Legislative Director in the office of Defendant, to Plaintiff responding to Plaintiff's inquiry about the proposed legislation.[1] Moreover, Plaintiff replied by letter on "2/20/2008 [sic]".[2] Subsequently, Plaintiff

---

[1]
> Exhibit 6 reads:
>
> Mr. DeGenes:
>
> We have received your inquiry. Your proposed legislation is unclear. If we are correct, it seems as if you are interested in guaranteeing legal representation? Your chronology of events, which you document, details internal disagreements among many local attorneys. As a congressional office, we do not typically get involved in individual personal legal disputes. As you know, Megan's Law is designed to provide information and notification to communities when sex offenders move into the neighborhood. Are you referencing the correct law? If you are listed on a public registry, this is from a conviction and the legal system would seem to be the best route to resolve any challenges to prior convictions.
>
> Michael Baxter
> Legislative Director
> Office of [Defendant]

Complaint, Exh. 6, at 17.

[2] In his reply letter to Mr. Baxter, Plaintiff states that he was contacting Defendant's office to learn about the process of proposing legislation because he had never done so before and Plaintiff was interested in establishing another legal avenue, besides a monetary award, that would provide Plaintiff with the services he initially requested. Complaint, Exh. 7, at 19. Plaintiff suggests that this legal avenue could be implemented by the Pennsylvania Bar Association or the Court of Common Pleas. *Id.* Additionally, Plaintiff asserts that he has a right to propose legislation because

faxed a privacy release form to Defendant's office and received a reply from John Savinda, Congressional Aide in the office of Defendant. Complaint, Exhs. 8 and 9.

Despite Plaintiff's Complaint of lack of communication with Defendant, the exhibits tell a different story.

## PROCEDURAL BACKGROUND

On October 11, 2007, Plaintiff filed this Complaint. On October 25, 2007, Defendant filed the instant Motion to Dismiss and Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss. (Docket No. 4) (hereinafter, "Defendant's Motion"). On December 21, 2007, Plaintiff filed his Brief in Opposition to Defendant's Motion to Dismiss (hereinafter, "Plaintiff's Opposition") (Docket No. 10). On December 28, 2007, Defendant filed his Reply Brief in Support of his Motion to Dismiss. (Docket No. 12).

As set forth above, Defendant moves to dismiss Plaintiff's Complaint for the following reasons: (1) pursuant to Rule 12(b)(1), Defendant challenges this Court's subject matter jurisdiction over this action by claiming Plaintiff lacks standing to sue and Defendant is immune from this lawsuit; (2) pursuant to Rule 12(b)(6), Defendant argues that Plaintiff fails to state a claim upon which relief can be granted, because the government's failure to act in a way desired by a particular individual does not give rise to a legal cause of action; and (3) pursuant to Rule 12(b)(5), Defendant asserts that Plaintiff failed to properly serve his Complaint as required by Federal Rule of Civil Procedure 4(i)(2)(A). Because the Court finds that Plaintiff lacks standing and Defendant is

---

the laws of the United States were created to protect people and his legislation would serve as an additional channel to protect individuals. *Id.* at 20. Lastly, Plaintiff emphatically states that it was very difficult to get in contact with Mr. Baxter about the matter because of Mr. Baxter's delayed responses. *Id.* at 19-20.

absolutely immune from suit for Plaintiff's allegations, pursuant to Rule 12(b)(1), the Court declines to reach Defendant's other arguments.

## STANDARD OF REVIEW

As a preliminary matter, "pleadings filed by *pro se* litigants are to be construed liberally." *Gagliardi v. Kratzenberg*, 404 F. Supp. 2d 858, 861 (W.D. Pa. 2005) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)); *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002). Moreover, "in such circumstances[,] the court has an obligation to 'apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.'" *Gagliardi v. Kratzenberg*, 404 F. Supp. 2d at 861 (citing *Higgins*, 293 F.3d at 688).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (U.S. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (U.S. 2007)). Moreover, when a movant invokes multiple bases for a motion to dismiss, the court should consider the Rule 12(b)(1) challenge first because all other defenses will become moot if the court must dismiss the complaint for lack of subject matter jurisdiction. *Hoyoung Song v. Klapakas*, Case No. 06-05589, 2007 U.S. Dist. LEXIS 27203, at *2 (E.D. Pa. April 12, 2007) (citing *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993)). Accordingly, the Court will first consider Defendant's challenge to this Court's subject matter jurisdiction pursuant to Rule 12(b)(1).

Dismissal is proper under Rule 12(b)(1) only when "the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991), *cert. denied*, 501 U.S. 1222 (1991). In reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court

must distinguish between facial attacks and factual attacks. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). When a defendant attacks a complaint on its face, he "[asserts] that considering the allegations of the complaint as true, and drawing all reasonable inferences in favor of [plaintiff], the allegations of the complaint are insufficient to establish a federal cause of action." *Mullen v. Thompson*, 155 F.Supp.2d 448, 451 (W.D. Pa.2001). When a defendant launches a factual attack on subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortenson v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3d Cir.1977). With respect to the present matter, Defendant asserts a factual argument regarding subject matter jurisdiction. Defendant's Motion, at 2.

When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of persuasion. *Kehr Packages*, 926 F.2d at 1409; *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Furthermore, while a court's review of a motion to dismiss is ordinarily limited to the contents of the complaint, including any attached exhibits[3], a court may consider some evidence beyond a complaint on a motion to dismiss "including public records . . ., documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the

---

[3] Here, Plaintiff includes the following exhibits: 1) Exhibit 1 - Plaintiff's webpage, www.doihaveanyrights.com, "I'm Guilty of What And I'm Being Denied the Right to Protect Myself"; 2) Exhibit 2 - October 16, 2003 Letter from Ms. Grassel to Mr. DeGenes; 3) Exhibit 3 - February 27, 2006 Arbitrator's Decision Before the Special Fee Determination Committee of the Allegheny County Bar Association; 4) Exhibit 4 - November 16, 2006 Letter from Plaintiff to Defendant; 5) January 24, 2007 Email from Mr. Baxter to Plaintiff; 6) Exhibit 6 - February 20, 2007 Email from Mr. Baxter to Plaintiff; 7) Exhibit 7 - February 23, 2007 Facsimile from Plaintiff to Mr. Baxter; 8) Exhibit 8 - February 25, 2007 Privacy Release Form signed by Plaintiff; 9) Exhibit 9 - March 27, 2007 Email from Mr. Savinda to Plaintiff; and 10) Exhibit 10 - January 20, 2003 Letter from Ms. Turzak to Plaintiff.

case." *Core Const. & Remediation, Inc. v. Village of Spring Valley, NY*, Case No. 06-1346, 2007 U.S. Dist. LEXIS 73069, at *2 (E.D. Pa. Sept. 27, 2007) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1380 n.l and n.2 (3d Cir. 1995)) (internal citation omitted). *See also, United States ex rel. Atkinson v. Pa. Shipbuilding Co.,* 473 F.3d 506, 514 (3d Cir. 2007).

In addressing Plaintiff's Complaint, the Court is mindful of the above standards, while giving Plaintiff's Complaint a liberal construction.

## ANALYSIS[4]

---

[4]

While not raised by the parties, the Court feels compelled to address the so-called "political question" doctrine, which does not apply in this matter. A nonjusticiable political question would ordinarily involve one or more of the following factors:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr*, 369 U.S. 186, 217 (1962). Courts have determined the congressional activities are not without limitation and judicial inquiry has been applied. *See, Schiaffo v. Helstoski*, 492 F.2d 413 (3d Cir. 1974) (holding that the Speech and Debate Clause did not preclude judicial inquiry into potential abuse of franking privilege by defendant-congressman)*; United States v. Brewster*, 408 U.S. 501, 512 (1972) (finding that the Speech and Debate Clause did not shield "a wide range of legitimate 'errands' performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, news releases, and speeches delivered outside the Congress."); *Government of Virgin Islands v. Lee*, 775 F.2d 514, 520 (3d Cir. 1985) (finding that legislative immunity did not bar an inquiry into whether congressman's activities were legislative in nature because legislative immunity generally only protected acts related to enacting legislation); *Karchin v. Metzenbaum*, 587 F. Supp. 563 (N. D. Ohio 1983) (holding the plaintiff-employee had a constitutionally-guaranteed right to petition congressional members but plaintiff's right did not include having his correspondence

*I. Subject Matter Jurisdiction Claim*

In his motion, Defendant requests dismissal of Plaintiff's Complaint arguing lack of standing and immunity. Specifically, Defendant asserts that this Court's jurisdiction is limited by Article 3, § 2 of the United States Constitution to "cases and controversies." Defendant's Motion, at 2-3. In support of immunity, Defendant asserts sovereign immunity, qualified immunity, and immunity under the Speech and Debate Clause of the United States Constitution. *Id.* at 3-4.

With respect to Defendant's Article III argument, Defendant alleges that Plaintiff has failed to establish any of the elements of standing, a "core component" to the case-or-controversy requirement. *Allen v. Wright*, 468 U.S. 737, 751 (1984). Defendant relies on *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), in which the Supreme Court stated that a party must establish standing by demonstrating:

> First . . . an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized, . . . (b) "actual or imminent, not 'conjectural' or 'hypothetical'" . . . . Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan*, 504 U.S. at 560-61. *See also, Pa. Prison Soc'y v. Cortes*, 508 F.3d 156, 160-161 (3d Cir. 2007).

Specifically, Defendant contends that Plaintiff has not identified an "injury in fact" because a "right to written reply from [Defendant] concerning his legislative proposal" does not constitute

---

viewed only by defendant-congressman to which it was addressed). Here, judicial inquiry is necessary to determine whether Defendant was acting within his official capacity as a member of Congress.

a legally protected interest, wherein the violation of same would give rise to an injury in fact.[5] Defendant's Motion, at 2. In his Complaint, Plaintiff states that he is "asking the Court to have the defendant, Congressman Tim Murphy, . . . give [Plaintiff] a written explanation as to why he will not present [Plaintiff's] legislation. [Plaintiff] wants a reason as to why the Congressman refuses to contact [Plaintiff]." Complaint, at 5. In reviewing these statements and Plaintiff's Complaint as a whole, the Court finds that Plaintiff has not identified an injury in fact. He does not state that a legally protected interest has been violated. Nor does he set forth a constitutional or statutory requirement that members of Congress respond to their constituents' request for legislation. Rather, he is simply asking this Court to order Defendant to send Plaintiff a written explanation as to why he will not present Plaintiff's legislation. This is not enough to establish standing. This Court finds Plaintiff's argument, i.e., that his rights were violated under the First Amendment with respect to the right to listen and receive information, to be without support as he has failed to demonstrate any injury. Plaintiff's Opposition, at 1. Accordingly, the Court finds that Plaintiff does not have standing to assert his claims and thus, this Court does not have jurisdiction over this matter.

Furthermore, the Court notes that Plaintiff attempts to explain his request for a response from

---

[5] Defendant also argues that if this Court determined there was a concrete injury, which Defendant predicts would be that Plaintiff suffered an injury when his former attorney failed to complete his investigation, Defendant claims that there is no causal connection between the injury and any conduct on the part of Defendant because Defendant did not cause this alleged injury, if any. Defendant's Motion, at 3. Furthermore, Defendant alleges that if this Court were to order Defendant to give Plaintiff a written explanation, the third element of standing would still not be met because his alleged injury remains unaddressed, whereby an explanation would not complete Plaintiff's requested investigation and would not result in legislation being drafted or passed by Congress. *Id.* The Court does not see any reason to seek such explanation, as in this Court's mind, an amended complaint would be futile given the defenses to Plaintiff's claim. Moreover, for the reasons set forth above, the Court does need to address these issues.

Defendant in his Opposition by asserting that he is being denied his rights under the First Amendment. He asserts that if he is refused a reply, "then this would permit [Defendant] to answer only those to whom he wishes to answer and to discriminate against [Plaintiff] and anybody he feels he wants to ignore." Plaintiff's Opposition, at 2. Relying on *Bowie v. Williams*, 351 F. Supp. 628 (E.D. Pa. 1972), Plaintiff states that the First Amendment prohibits the government from limiting information to the public because " '[i]t is part of congressman's responsibility to those he represents to keep them informed.' " Plaintiff's Opposition, at 2 (citing *Bowie*, 351 F. Supp. at 631) (internal citation omitted).

While courts have recognized that "[b]esides participating in debates and voting on the Congressional floor, a primary obligation of a Member of Congress in a representative democracy is to serve and respond to his or her constituents. Such service necessarily includes informing constituents and the public at large of issues being considered by Congress." *Williams v. United States*, 71 F.3d 502, 507 (5th Cir. 1995). *See also, United States v. Brewster*, 408 U.S. 501, 512 (1972) (describing as "entirely legitimate" a "wide range" of "activities other than purely legislative activities," including " 'news letters' to constituents, news releases, and speeches delivered outside the Congress"); *Operation Rescue Nat'l v. United States*, 975 F. Supp. 92, 107 (D. Mass. 1997) (holding that senator's remarks about the anti-abortion organization were partly made to inform the public of the reasons for his position and therefore, constituted official duties protected under Speech and Debate Clause); *Chapman v. Rahall*, 399 F. Supp. 2d 711, 715 (W.D. Va. 2005) (finding that congressman's remarks to a television reporter about plaintiff's affiliation to an Islamic organization could reasonably be deemed to be an ordinary attribute of his job as a legislator). However, *Bowie* is distinct from the matter at hand. In *Bowie*, the Court's primary issue was the congressional usage

of a frank.[6] The Court found that the plaintiff's argument that the mailing of information to a defendant congressman's constituents amounted to a distribution of campaign literature was without merit. *Bowie*, 351 F. Supp. at 632. The Court stated that the plaintiffs failed to show that the frank was improperly loaned to the congressman's campaign committee. *Id.* at 634. Only in *dicta*, the Court noted that it was part of a congressman's responsibility to his constituents to keep them informed and the publication of a newsletter was a mechanism in order to fulfill this purpose. *Id.* at 631. The Court did not address whether the congressman had a duty to respond to a constituent's letter, as Plaintiff attempts to assert in his argument.[7]

Moreover, the Court finds that Defendant is afforded absolute immunity under the Speech or Debate Clause of Article I, § 6, Clause 1 of the United States Constitution.[8] U.S. Const. art. I, § 6, cl. 1 ("The Senators and Representatives shall . . . for any Speech or Debate in either House, they shall not be questioned in any other Place."). The Speech or Debate Clause protects members of

---

[6] A frank is an "autographic or facsimile signature ... of persons authorized ... to transmit matter through the mail without prepayment of postage ... ." 39 U.S.C. § 3201(3).

[7] In *Williams, supra,* the plaintiff brought a defamation action against the defendant, a congressman, under Federal Tort Claims Act, 28 U.S.C.S. §§ 1346(b), 2671-2680. The Court of Appeals for the Fifth Circuit determined that the congressman's remarks, which were made in the context of an interview to inform the public about Congress's appropriation of money, fell within the course and scope of the defendant's position as a member of Congress and therefore, he was not liable. *Williams*, 71 F.3d at 507. The Court concluded that the congressman had a duty to inform the public about issues at large and the use of an interview was a permissible activity to convey the congressman's message. *Id.*

[8] Furthermore, Defendant also asserts sovereign and qualified immunity. Defendant's Motion, at 3-4. Because this Court finds that Defendant enjoys absolute immunity under the Speech or Debate Clause, this Court does not reach the question of whether he is entitled to sovereign and qualified immunity.

Congress, as well as their aides, from being prosecuted civilly and criminally for protected legislative acts. *Gravel v. United States*, 408 U.S. 606, 614 (1972). However, "[t]hat [Congress members] generally perform certain acts in their official capacity as [Congress members] does not necessarily make all such acts legislative in nature." *Id.* at 625. *See also Fields v. Office of Johnson*, 459 F.3d 1, 12 (D.C. Cir. 2006). Moreover, legislative activities are not "all-encompassing." *Gravel*, 408 U.S. at 625. Rather, legislative activities

> must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings *with respect to the consideration and passage or rejection of proposed legislation* or with respect to other matters which the Constitution places within the jurisdiction of either House. As the Court of Appeals put it, the courts have extended the privilege to matters beyond pure speech or debate in either House, but only when necessary to prevent indirect impairment of such deliberations.

*Id.* (*citing United States v. Doe*, 455 F.2d 753, 756-757 (1st Cir. 1972)) (internal quotations omitted) (emphasis added). *See generally, Baraka v. McGreevey*, 481 F.3d 187, 212-213 (3d Cir. 2007); *Fowler-Nash v. Democratic Caucus of the Pa. House of Representatives*, Case No. 05-1672, 2006 U.S. Dist. LEXIS 6323 (W.D. Pa. Feb. 17, 2006). "The Speech or Debate Clause protects conduct that is integral to the legislative process, not a Member's legislative goals." *Fields v. Office of Johnson*, 459 F.3d 1, 12 (D.C. Cir. 2006). *See also, Fowler-Nash,* 469 F.3d at 331. Here, Plaintiff is "asking to receive a reply from either [Defendant] or his special legislative committees that evaluate the worth of legislation that comes before them." Plaintiff's Opposition, at 7.[9] This kind

---

[9] Plaintiff also asserts that the Overbreadth Doctrine applies in this matter, thereby challenging Defendant's immunity under the Speech or Debate Clause. Plaintiff's Opposition, at 6. However, Plaintiff does not cite to any legislation or statute that would qualify as overbroad and therefore, impinge on his First Amendment rights. Thus, the Court finds Plaintiff's claim is without merit.

of request clearly falls within the protected class of activity that qualifies under the Speech or Debate Clause for the following reasons: (1) Defendant would be acting in his legislative capacity with respect to reviewing Plaintiff's proposed legislation in order to deliberate on its passage in Congress; (2) Defendant's explanation to Plaintiff about the proposed legislation would be a communicative process; and (3) Defendant's response would be specifically about Defendant's proceeding with respect to the "rejection of proposed legislation," which is an integral part of the legislative process. *Gravel*, 408 U.S. at 625.  Thus, Defendant is protected under the Speech or Debate Clause from providing such information to Plaintiff as Plaintiff fails to put forth any indication that Defendant's activity falls outside the scope of immunized acts under the Speech or Debate Clause.

Lastly, the Court notes that because it finds it lacks subject matter jurisdiction, pursuant to Civil Rule 12(b)(1), the Court need not address Defendant's remaining arguments.

## CONCLUSION

Based on the foregoing, the Court GRANTS Defendant's Motion to Dismiss given lack of subject matter jurisdiction.  Further, the Court suggests that Plaintiff make an appointment to meet with Defendant or his aides at Defendant's offices located at 504 Washington Road, Pittsburgh, Pennsylvania or 322 Cannon Building, Washington, District of Columbia, if Plaintiff still wishes to pursue a further response from Defendant.  An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf: All Counsel of Record.

Date:   February 15, 2008.